IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Tyrone A. Ravenell, ) | Civil Action No. 6:15-1743-PMD-KFM |
| Petitioner, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Warden Cecilia Reynolds, ) | |
| ) | |
| Respondent. ) | |

The petitioner, a state prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2254.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) (D.S.C.), this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the District Court.

## BACKGROUND

The petitioner is currently incarcerated at Evans Correctional Institution in the South Carolina Department of Corrections ("SCDC"). The petitioner was indicted by the Horry County Grand Jury in January 1997 for armed robbery and first degree burglary (app. 268-69). W. Thomas Floyd of the Fifteenth Circuit Public Defender's Office represented the petitioner on the charges. The State was represented by G. Scott Bellamy of the Fifteenth Circuit Solicitor's Office. A jury trial was held on January 12, 1998, before the Honorable James E. Lockemy, South Carolina Circuit Judge. The petitioner was present through jury selection but was tried *in absentia* when he did not arrive at court for trial the following day (app. 163–64, 184). The jury found the petitioner guilty as charged (app.

159).  The judge sentenced the petitioner under seal until the petitioner's presence could be secured (app. 167).

In July 2006, about eight and a half years after the conclusion of his trial, the petitioner was apprehended by law enforcement in Miami, Florida (app. 170).  His sentence was unsealed and issued at a hearing on November 9, 2006, before the Honorable Clifton Newman, South Carolina Circuit Judge (app. 169).  Judge Newman modified the petitioner's sentence from two consecutive 20-year terms of incarceration to concurrent 20-year sentences on each charge (app. 179).

### Underlying Case Facts Presented at Trial

On the night of the offense, Bradley Spivey ("Spivey"), the victim in this case, was at home with his girlfriend when they heard a knock on the door.  Spivey peeked through the door window, "heard a boom," was hit in the face by the door, fell backwards, and was quickly shoved into a wall and hit in the back of the head by two home invaders (app. 39).  One invader with a white rag on his face held Spivey's girlfriend at gunpoint (app. 61).  The burglars demanded that Spivey give them "all the money" he had, threatening to shoot Spivey and his girlfriend if they did not comply (app. 40).  The home invaders then fled and ran down the street (app. 41).

Subsequently, Spivey called 911, and was able to provide a physical description of one assailant, the petitioner (app. 42).  Spivey described the petitioner as "six-one, six two; black fellow; 240, 260; black pants, black hoodie, with a hood over his head; white rag across his face; black Nikes, they were real dirty, had a hole right in this side right here.  They had scuff marks on the front of it.  And they had, like, little red blotches on them" (app. 43).

Law enforcement apprehended the petitioner less than a half-mile away (app. 119).  At the time of apprehension, the petitioner wore the same clothes described by the victims:  "a black hoodie, black pants, a white tee shirt, and he had a black hooded

2

sweatshirt tied around his waist" (app. 105). "He was real hyper. He was panting and he was sweating quite a bit" in the 65-degree night (app. 106). He also had "a white rag hanging out of his pants" (app. 108). Spivey was taken to the site where the petitioner was apprehended and identified the petitioner largely based upon his distinct memory formed while staring at the petitioner's shoes during the incident (app. 44–45).

### Direct Appeal

The petitioner's trial attorney timely filed a notice of appeal of the petitioner's conviction and sentence on November 16, 2006 (doc. 25-2). LaNelle DuRant of the South Carolina Commission on Indigent Defense, Division of Appellate Defense, represented the petitioner on appeal. On July 30, 2007, the petitioner moved for a new trial or for a reconstruction hearing upon information and belief that the petitioner's trial transcript and record could not be produced due to the amount of time that transpired between the petitioner's trial and sentencing (doc. 25-3). On behalf of the State, Senior Assistant Deputy Attorney General Salley Elliott cross-petitioned to dismiss the appeal (doc. 25-4). The Court of Appeals dismissed the appeal on October 24, 2007, refusing, *inter alia*, "to allow Appellant to benefit from his own misdeed by granting him a new trial" (doc. 25-5). On November 5, 2007, appellate counsel petitioned for rehearing, which the Court of Appeals denied on December 11, 2007 (docs. 25-6 and 25-7). On January 11, 2008, the petitioner filed a petition for a writ of certiorari (doc. 25-8).

In the meantime, counsel received notice that the petitioner's trial transcript was available for production. Given this information, the petitioner moved to remand the pending petition for writ of certiorari to the Court of Appeals so that the petitioner could have his direct appeal (doc. 25-9). The State did not object to the remand. By order dated March 5, 2008, the South Carolina Supreme Court granted the motion to remand the case to the Court of Appeals and dismissed the petition for a writ of certiorari (doc. 25-11).

In his final brief of appellant, the petitioner raised the following issues:

3

1. Did the trial court err in proceeding with the trial in Appellant's absence?

2. Did the trial court err in not quashing the jury and selecting a second jury when the jury consisted of only one person of a minority race and only two people of a minority race were in the jury pool pulled for this trial?

(Doc. 25-12).  Senior Deputy Assistant Attorney General Salley Elliot made the final brief of respondent on behalf of the State (doc. 25-13).

The South Carolina Court of Appeals affirmed the petitioner's convictions in a published opinion issued March 17, 2010 (app 181-88).  The petitioner's direct appeal came to a close by issuance of Remittitur on April 7, 2010 (doc. 25-14).

***PCR***

On February 2, 2011, the petitioner filed an application for post-conviction relief ("PCR") (2011-CP-26-00992) in which he raised the following claims:

(a) Ineffective assistance of trial counsel

1. Trial counsel failed to consult adequately with defendant. Counsel was appointed October 4, 1996. Counsel met defendant, for the first time, January 13, 1998, fifteen minutes prior to jury selection. Counsel denied defendant legal advice.

2. Trial counsel failed to discuss any information from Rule (5) discovery with defendant. This information was vital to make defendant aware of his legal options: if he wanted to enter a guilty plea or have trial or if he understood the legal consequences of a trial or guilty plea.

3. Trial counsel failed to adequately prepare for trial. Counsel interviewed no witnesses listed in indictment face to face, made no written motion for continuance though he knew of his troubles locating a vital witness a week prior to trial, (Corrected Tr. Pg. 5, lines 9-; Pg. 6, lines 1-), and failed to present a reciprocal discovery, (Corrected Tr. Pg. 7, lines 9-21).

4. Trial counsel failed to conduct a reasonable investigation and interview potential witnesses. On the

4

morning of arrest, September 30, 1996, M.B.P.D checked into defendant's statement to office Tucker (Tr. Pg. 84, lines 18-22). Three witnesses were interviewed at the residence on 24th Ave. North that gave statements supporting defendant's statement. These witnesses testimony would conflict with the state's theory of how defendant came to be on Graham St., the last time they were in contact with him, and whom the defendant was last seen with.

5. Trial counsel failed to subpoena alibi witness which was vital to defense of case. (Corrected Tr. Pg. 5, line 20). Although not allowed into evidence, the court determined that heresay[sic] statement given to officer Tucker was probable cause to detain witness and defendant. (Tr. Pg. 90, lines 15-; Pg. 91, lines 1-7; Pg. 95, lines 10-20). Without this witness present, defendant was not able to challenge what may or may not have been said to officer Tucker. (Tr. Pg. 139, lines 13-; Pg. 140, lines 1-4).

6. Trial counsel failed to conduct independent forensic testing of physical evidence, (Tr. Pg. 47, lines 14-19, Defendant's Clothing, State's Evidence #'s 3, 4, 5, 6). The solicitor entered photos in as evidence, (Tr. Pg. 50, lines 11-14, State's Evidence #'s Two G and Two F), showing blood from the victim in numerous areas of the crime scene. Independent testing would have shown that defendant had no blood on his clothing, even though a physical struggle occurred in the commission of this crime. (Tr. Pg. 32, lines 17 and 18).

7. Trial counsel failed to develop a viable defense theory. Counsel was not sure of his defense strategy which resulted in his being lead[sic] by the Court to establish alibi charge, (Corrected Tr. Pg. 9, lines 5-19). Alibi charge is considered especially crucial when evidence is entirely circumstantial. Competent counsel, acting effectively should have a solid trial theory. Counsel had no clear discernible defense strategy.

(b) Sixth Amendment Violation

(c) Fourteenth Amendment Violation.

(Doc. 25-15).

On March 16, 2011, the State made its return (app. 196–99). Heather Cannon represented the petitioner at an evidentiary hearing held on November 7, 2011, before the Honorable Larry Hyman, South Carolina Circuit Judge. Christina Catoe, Assistant Attorney General, appeared on behalf of the State (app. 200). The petitioner and his trial counsel testified (app. 201). Vickie Marie Jackson, a friend of the petitioner who allegedly transported him to various court dates, also testified (app. 201, 224). By order filed May 21, 2012, Judge Hyman found the petitioner "failed to meet his burden of proof as to any of his claims of ineffective assistance of counsel" and denied and dismissed the application with prejudice (app. 256–67).

### PCR Appeal

The petitioner timely noticed his PCR appeal on May 30, 2012. Subsequently, the petitioner filed a *pro se* motion to alter or amend judgment pursuant to South Carolina Civil Procedure Rule 59(e), which called for the PCR court to reconsider its ruling as it pertained to counsel's pre-trial consultation with the petitioner (doc. 25-17).

Robert Dudek of the South Carolina Office of Indigent Defense, Division of Appellate Defense, filed a *Johnson* petition[1] for writ of certiorari raising the following issue:

> Whether the PCR court erred by ruling petitioner was effectively represented where he only met his attorney immediately before jury selection, since the record in this case reflects a complete failure by trial counsel to advocate for petitioner and prejudice therefore should be presumed?

(Doc. 25-18 at 3). In conjunction with the *Johnson* petition, appellate counsel filed a petition to be relieved as counsel, citing that "[i]n his opinion seeking certiorari from the order of dismissal [was] without merit" (doc. 25-28 at 12).

---

[1] The Supreme Court of South Carolina "has approved the withdrawal of counsel in meritless post-conviction appeals, provided the procedures outlined in *Anders v. California*, 386 U.S. 738 (1967), were followed." *Johnson v. State*, 364 S.E.2d 201, 201 (S.C. 1988).

6

The petitioner filed a *pro se* petition for certiorari citing the following additional grounds (verbatim):

> (1) Whether the PCR Court erred by ruling that no specific evidence or argument was presented regarding a "Sixth Amendment violation", since the record in this case reflects that counsel did not submit the required notice of alibi pursuant to Rule 5(e)(1), of the South Carolina Rules of Criminal Procedure, SCRCrimP?
>
> (2) Whether counsel failed to question alibi witnesses constitutes a critical stage under *Cronic*, was prejudicial to Petitioner's defense?
>
> (3) Whether counsel's failure to adequately consult was prejudicial to Petitioner's case?
>
> (4) Whether counsel's failure to reasonably investigate was prejudicial to the case?

(Doc. 25- 20).  The case thereafter transferred to the Court of Appeals.[2]

By order filed March 3, 2015, the Court of Appeals denied the petition for writ of certiorari and granted appellate counsel's petition to be relieved (doc. 25-21).  The Remittitur was issued on March 23, 2015, and filed on March 25, 2015 (docs. 25-22, 25-23).

## **FEDERAL PETITION**

On April 23, 2015, the petitioner filed his Section 2254 petition (doc. 1).  On August 31, 2015, the respondent filed a motion for summary judgment (doc. 24) and a return and memorandum (doc. 25).  By order filed the same date, pursuant to *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), the petitioner was advised of the summary judgment procedure and the possible consequences if he failed to adequately respond to the motion (doc. 26).  After being granted two extensions of time, the petitioner filed a

---

[2] S.C. Appellate Ct. R. 243(l) provides that "[t]he Supreme Court may transfer a case filed under this rule [governing certiorari review of post-conviction relief actions] to the Court of Appeals."

response in opposition to the motion for summary judgment on November 30, 2015 (doc. 36).

In his federal habeas corpus petition, the petitioner makes the following claims:

**Ground One:** Petitioner was denied his 14th Amendment right when the Ineffective Assistance of Counsel

**Supporting Facts:** Trial counsel Floyd testified that there was notes of a meeting on October 31, 1996. He testified that nothing in his file that suggests he met with the petitioner again until the date of trial, January 13, 1998. (SEE APPENDIX. p. 232, ll. 12-25). There was no consultation, no investigation, even though petitioner went to trial counsels office and provided witnesses information, and no preparation for trial.

**Ground Two:** 14th Amendment Violation, Procedural Due Process

**Supporting Facts:** The record in this case reflects that counsel did not submit the required notice of alibi pursuant to Rule 5(e)(1) of the SCRCrimP. PLEASE SEE (SUPPLEMENTAL APPENDIX. p. 6, 11. 9-21; and SUPPLEMENTAL APPENDIX. p. 8, 11. 10-11). Trial counsel knew of his troubles locating his alibi witness a week prior to trial, but waited a minute or so before jury selection to motion for a continuance. PLEASE SEE (SUPPLEMENTAL APPENDIX. p. 4, 1. 25 and p. 5, 11. 1-25).

**Ground Three:** 6th Amendment Violation / Ineffective Assistance of Counsel

**Supporting Facts:** Trial Counsel asked for a week continuance because a vital witness to his alibi defense moved to Atlanta. This witness was not under Subpoena because trial counsel said if he called, the witness would be there. This witness was identified as Bob Cumbee. SEE (SUPPLEMENTAL APPENDIX. p. 4, 11. 7-24; and SUPPLEMENTAL APPENDIX. p. 7, 11. 11-17). Trial counsel then testified to the PCR Court that he never interviewed any of the witnesses on the Investigators assignment sheet and his investigator tried as the trial was starting. Bob Cumbee's name is the first name on the assignment sheet. Trial counsel also testified that he had no idea what Bob Cumbee could have testified to as a witness and there was no statement from Bob Cumbee in his discovery, in anything he received, or anything he had seen. (SEE

APPENDIX. p. 243 1. 25 and APPENDIX. p. 244, 11. 1-13). Trial counsel deliberately deceived the Trial Court motioning for a continuance solely for an alibi witness that he never called or interviewed.

**Ground Four:**    6th and 14th Amendment Violation. Trial counsel failed to consult with Petitioner at all pertaining to the facts of his case.

**Supporting Facts:** Petitioner was housed at J Reuben Long Detention Center from September 30th, 1996 to February 20th 1997 and never met counsel. February 28th, 1997 petitioner went to trial counsels office and met with his investagator [sic]. Petitioner wrote letters to trial counsels office, but never received any responses. SEE (APPENDIX. p. 245, 11. 1-15).

**Ground Five:**    6th and 14th Amendment Violation. Trial counsel failed to investigate the facts surrounding his case.

**Supporting Facts:** PLEASE SEE SUPPORTING FACTS FOR GROUNDS ONE THROUGH FOUR IN SUPPORT OF THIS GROUND.

**Ground Six:**    6th and 14th Amendment Violation. Trial counsel failed to adequately prepare for trial.

**Supporting Facts:** PLEASE SEE SUPPORTING FACTS FOR GROUNDS ONE THROUGH FOUR IN SUPPORT OF THIS GROUND.

**Ground Seven:** 6th and 14th Amendment Violation. Ineffective assistance of P.C.R. counsel and Ineffective Assistance of Appellate Counsel

**Supporting Facts:** P.C.R. counsel testified at Petitioners P.C.R hearing that they still couldn't find Bob Cumbee. SEE (Appendix. p. 212, 1. 3). Petitioner found out that Mr. Cumbee was a ward of South Carolina Department of Corrections at the time of petitioners P.C.R hearing. P.C.R counsel could not been diligent in her search for Mr. Cumbee. Appellate counsel inadvertently left out a vital transcript that was added on record at the P.C.R hearing, SEE (SUPPLEMENTAL APPENDIX). Appellate counsel submitted the following fact in support of his Petition to File SUPPLEMENTAL APPENDIX, "counsel was not aware of its existence when he filed the Appendix with the Court. The Petitioner in this case used Appellate counsels

9

Appendix to support his pro-se claim to the State Supreme Court that the (SUPPLEMENTAL APPENDIX) needed to be added to the record. Petitioner wrote to Appellate counsel concerned about the direction of his Petitioner, but was tol[d] to be patient because Primarily, counsels case load cconsists[sic] of death penalty and murder cases with lengthy transcripts. Petitioner believes this is how Appellate counsel was able to leave out a vital transcript that was introduced during the P.C.R hearing he was scrutinizing for error. PLEASE SEE ATTACHMENT #9.

(Doc. 12-1).

## **APPLICABLE LAW AND ANALYSIS**

### *Summary Judgment Standard*

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257.  In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324.  Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient

to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252.   Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion.  *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

**Exhaustion**

Before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A).  In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1)  through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203, SCACR; S.C. Code Ann. §§ 17-27-10,-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C.1976).  If the PCR court fails to address a claim as is required by South Carolina Code § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP to preserve the issue for appellate review. *Marlar v. State*, 653 S.E.2d 266, 267 (S.C. 2007).[3] The petitioner has met the requirement of 28 U.S.C. § 2254(b)(1)(A) by exhausting his direct appeal and PCR remedies.

The South Carolina Supreme Court has held that the presentation of claims to the state court of appeals without more is sufficient to exhaust state remedies for federal habeas corpus review.  *State v. McKennedy*, 559 S.E.2d 850 (S.C. 2002); *see also In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 471 S.E.2d 454 (S.C. 1990).  In *McKennedy*, the South Carolina Supreme Court specifically held that *In re Exhaustion* had placed discretionary review by the South Carolina Supreme Court

---

[3]In *Bostick v. Stevenson*, 589 F.3d 160, 162–65 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007, decision in *Marlar*, South Carolina courts had not been uniformly and strictly enforcing the failure to file a motion pursuant to Rule 59(e), SCRCP, as a procedural bar.  Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

"outside of South Carolina's ordinary appellate review procedure pursuant to *O'Sullivan [v. Boerckel*, 526 U.S. 838 (1999)]." 559 S.E.2d at 854. Accordingly, a claim would not be procedurally barred from review in this court for failure to pursue review in the South Carolina Supreme Court after an adverse decision in the South Carolina Court of Appeals, either after a direct appeal or after pursuing relief in a PCR petition.

A habeas petitioner must first present his claim to the court in a manner in which it may be reviewed on the merits. *Harris v. Reed*, 489 U.S. 255, 262 (1989); *Coleman v. Thompson*, 501 U.S. 722, 735 (1991). It is well settled in South Carolina that "[i]ssues not raised and ruled upon in the trial court will not be considered on appeal." *State v. Dunbar*, 587 S.E.2d 691, 693–94 (S.C. 2003). Moreover, it is not enough that the argument presented stems from the same factual scenario; rather, the legal argument must be the same as the argument presented below. *See, e.g., State v. Haselden*, 577 S.E.2d 445, 448 (S.C. 2003) (finding differing ground for objection did not preserve issue presented for review: defendant's objection on relevancy did not preserve argument the evidence was improper character evidence); *State v. Caldwell*, 662 S.E.2d 474, 482 (S.C. Ct. App. 2008) ("Because the argument raised on appeal does not appear to have been specifically raised below, it may not be preserved on appeal.").

### *Procedural Bar*

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas corpus relief on an issue after he failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

12

If a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar.  As the Supreme Court has explained:

> [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10–11 (1984).

"[A] federal court ordinarily may not consider claims that a petitioner failed to raise at the time and in the manner required under state law unless 'the prisoner demonstrates cause for the default and prejudice from the asserted error.'"  *Teleguz v. Pearson*, 689 F.3d 322, 327 (4th Cir. 2012) (quoting *House v. Bell*, 547 U.S. 518, 536 (2006)).  To show cause, a petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule," *Murray v. Carrier*, 477 U.S. 478, 488 (1986), or that "the factual or legal basis for the claim was not reasonably available to the claimant at the time of the state proceeding." *Roach v. Angelone*, 176 F.3d 210, 222 (4th Cir. 1999).  "Alternatively, Petitioner may prove that failure to consider the claims will result in a fundamental miscarriage of justice."  *McCarver v. Lee*, 221 F.3d 583, 588 (4th Cir. 2000) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).  A fundamental miscarriage of justice equates to the conviction of someone who is actually innocent.   However, "actual innocence" requires "factual innocence, not mere legal insufficiency."  *Bousley v. United States*, 523 U.S. 614, 623 (1998).

In *Martinez v. Ryan*, 132 S. Ct. 1309, 1315 (2012), the United States Supreme Court  carved out a "narrow exception" that modified the "unqualified statement in *Coleman* [501 U.S. at 754–55] that an attorney's ignorance or inadvertence in a postconviction proceeding does not qualify as cause to excuse a procedural default."  In *Martinez*, the Court

13

> read *Coleman* as containing an exception, allowing a federal habeas court to find "cause," thereby excusing a defendant's procedural default, where (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law requires that an "ineffective assistance of trial counsel [claim] ... be raised in an initial-review collateral proceeding."

*Trevino v. Thaler*, 133 S. Ct. 1911, 1918 (2013) (quoting *Martinez*, 132 S. Ct. at 1318–19, 1320–21). The Court in *Martinez* also noted:

> When faced with the question whether there is cause for an apparent default, a State may answer that the ineffective-assistance-of-trial-counsel claim is insubstantial, i.e., it does not have any merit or that it is wholly without factual support, or that the attorney in the initial-review collateral proceeding did not perform below constitutional standards.

132 S. Ct. at 1319.

### Ineffective Assistance of Counsel

All of the claims asserted in the petition concern whether the petitioner received ineffective assistance of counsel during his state court proceedings. To be entitled to relief on an ineffective assistance claim, the petitioner had to have shown in state court that (1) trial counsel's performance fell below an objective standard of reasonableness, and (2) a reasonable probability exists that but for counsel's error, the result of that proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–94 (1984). *Strickland* does not guarantee perfect representation, only a "'reasonably competent attorney.'" *Id.* at 687 (quoting *McMann v. Richardson*, 397 U. S. 759, 770 (1970)). There is a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment in making all significant decisions in the case. *Id.* at 690.

The review of ineffective assistance of counsel claims in federal habeas is not simply a new review of the merits; rather, habeas review is centered upon whether the state

court decision was reasonable. *See* 28 U.S.C. § 2254(d).  Additionally, each step in the review process requires deference—deference to counsel and deference to the state court that previously reviewed counsel's actions:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult.  The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so.  The *Strickland* standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington v. Richter*, 562 U.S. 86, 104 (2011)(internal citations omitted).

### Grounds One, Four, Five, and Six

In Ground One, the petitioner asserts that he received ineffective assistance of counsel at trial because "[t]here was no consultation, no investigation, . . . and no preparation for a trial" (doc. 1 at 5).  The petitioner reiterates his allegations about trial counsel's failure to consult, investigate, and prepare in his Grounds Four, Five, and Six, respectively (doc. 1 at 10, 22, 23).  The respondent seeks summary dismissal of these grounds, asserting that the PCR court's denial and dismissal of these same allegations is entitled to deference in this action (doc. 25 at 21).

The PCR court found that the petitioner failed to establish either deficient performance or prejudice as to this claim, noting:

> In considering the Applicant's case, this Court had before it the Applicant's PCR file, including all pleadings filed, the records of the Horry County Clerk of Court regarding the convictions, the Applicant's records from the South Carolina Department of Corrections, the trial transcript, and the direct appeal records. This Court carefully listened to all of the testimony presented at the hearing and weighed the same according to credibility. This Court found the testimony of W. Thomas Floyd, Esquire, to be highly credible in all respects, while the Applicant's testimony

15

was lacking in credibility, particularly with respect to his claim that he did know he had to be present at trial after attending jury selection, and with respect to his alibi defense.  The Applicant's former girlfriend's testimony was questionable because it strains credulity that the girlfriend of the Applicant, who accompanied the Applicant to all court appearances and was very involved at this critical time in the Applicant's life, would fail to recall whether or not she was with her boyfriend on this very important night in his life.

First, this Court finds that the Applicant's allegations regarding counsel's failure to adequately consult and prepare for trial, failure to discuss discovery, and failure to develop a viable defense theory do not warrant relief.  Regardless of the length or number of meetings with the Applicant, counsel worked on the case outside of the presence of the Applicant.  *See Harris v. State*, 377 S.C. 66, 75, 659 S.E.2d 140, 145 (2008) (pointing out that the brevity of time spent in consultation with a defendant does not necessarily establish ineffectiveness of counsel).  In addition, counsel indicated that he did discuss the discovery with the Applicant.  Further, counsel indicated that he had sufficient time to prepare for trial and to develop a trial strategy premised upon attacking the identification of the perpetrator's shoes and otherwise pointing out the weaknesses in the State's case such as the lack of physical evidence.  This Court finds that the Applicant failed to establish that counsel's performance was deficient with regard to his general preparation, but even if it had been deficient, the Applicant failed to establish prejudice where he failed to present credible evidence regarding what could have been developed has counsel had further time to consult with him or to prepare for trial.  *See Harris v. State*, 377 S.C. 66, 75-76, 659 S.E.2d 140, 145-46 (2008); *Jackson v. State*, 329 S.C. 345, 353-54, 495 S.E.2d 768, 772 (1998); *Davis v. State*, 326 S.C. 283, 288, 486 S.E.2d 747, 749 (1997); *Skeen v. State*, 325 S.C. 210, 214, 481 S.E.2d 129, 132 (1997) (all finding that relief was not warranted where the applicant failed to prove what possible effect additional preparation would have had on the trial).

(Doc. 25-1 at 265–66).

The petitioner cannot show the PCR court's denial of relief was the result of an unreasonable determination of the facts as the factual findings in this case are supported by the record.  As set forth above, the PCR court found trial counsel's testimony to be very credible while finding the petitioner's testimony lacking in credibility, a factual finding entitled to deference in this action.  *See Cagle v. Branker*, 520 F.3d 320, 324 (4ᵗʰ Cir. 2008) (citing 28 U.S.C. § 2254(e)(1) ("[F]or a federal habeas court to overturn a state court's credibility judgements, the state court's error must be stark and clear.")); *see also* 28 U.S.C.

16

§ 2254(e)(1); *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) ("28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them.").  Trial counsel testified that he met with the petitioner on October 31, 1996, before the petitioner got out of jail on bond, but trial counsel's file indicated that his office lost track of the petitioner once he was released from jail (app. 232–34).  Trial counsel testified that his file reflected that a number of appointments were made with the petitioner "but there [were] no notes taken, which indicates . . . that for one reason or another he may not have been able to attend them" (App. 234).  However, trial counsel did have a note that a plea offer was relayed to the petitioner on January 27, 1997, and at that time the petitioner indicated he would not plead to anything (app. 234–35).  Trial counsel further testified that he worked on petitioner's case out of petitioner's presence, and he had sufficient time to prepare for the case, adding that his strategy was to attack the State's evidence of identification, which trial counsel did not think was strong (app. 242).  Since the PCR court's factual findings are supported by the record, the petitioner has failed to show that the denial of relief was based upon an unreasonable determination of the facts.

The petitioner also cannot show the PCR court unreasonably applied federal law in denying relief upon this claim.  The PCR court utilized the proper standard of review under *Strickland*, and the petitioner cannot show the PCR court's denial of relief was an unreasonable application of *Strickland* (app. 257–58, 263–64).  Though the PCR court cited to state law in addressing these particular claims (app. 263–64), the same principles are also part of federal law, including the law set forth in *Strickland*.  *See Strickland*, 466 U.S. at 690–91 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."); *see also United States*

17

*v. LaRouche*, 896 F.2d 815, 825 (4th Cir. 1990) (noting specific prejudice must be identified to succeed on a claim of ineffectiveness of counsel due to lack of preparation time); *Easter v. Estelle*, 609 F.2d 756, 759 (5th Cir. 1980) (explaining "that the brevity of time spent in consultation, without more, does not establish that counsel was ineffective).

The petitioner argues in his response to the motion for summary judgment that the proper standard for reviewing counsel's performance is found in *United States v. Cronic*, 466 U.S. 648 (1984) rather than *Strickland*. This court disagrees. The United States Supreme Court has made clear that *Cronic*, which establishes that prejudice may be presumed in some instances, is only applicable in three distinct situations: (1) when there is a "'complete denial of counsel[,]'" (2) when "'counsel entirely fails to subject the prosecution's case to meaningful adversarial testing[,]'" and (3) when "counsel is called upon to render assistance under circumstances where [even] competent counsel very likely could not . . . ." *Bell v. Cone*, 535 U.S. 685, 695–96 (2002) (quoting *Cronic*, 466 U.S. at 659). None of these situations is present in the petitioner's case—trial counsel was appointed before the petitioner made bond, and as found by the PCR court and as the record reflects, he worked on the petitioner's defense prior to trial and continued to represent the petitioner at trial even in the petitioner's absence. The PCR court correctly identified *Strickland* as the applicable standard. Accordingly, the petitioner has failed to show the PCR court unreasonably applied federal law in denying relief upon these claims, and, therefore, he is not entitled to relief under 28 U.S.C. § 2254(d)(1).

### Grounds Two and Three

In his Grounds Two and Three, the petitioner alleges that trial counsel was ineffective in securing an alibi witness, Bob Cumbee,[4] for trial (doc. 1 at 7, 8, 21). The petitioner specifically argues that trial counsel's performance was rendered ineffective by

---

[4] Spelled "Cumbee" and "Cumby" in the record.

his failure to do the following: file the notice of alibi pursuant to Rule 5(e)(1), SCRCrimP;

subpoena Cumbee; and timely seek a continuance to find Cumbee. The respondent

submits that the PCR court reasonably interpreted the facts and applied relevant federal

law with regard to these claims of ineffective assistance of counsel (doc. 25 at 26–31).

Consequently, the respondent asks for summary judgment as to these grounds.

In his PCR action, the petitioner alleged that trial counsel was ineffective for

failing to interview and call potential witnesses at trial (app. 158). The PCR court rejected

that allegation, finding as follows:

> [T]his Court finds that the Applicant failed to establish prejudice
> from counsel's failure to interview and call potential witnesses
> at trial. *See Strickland v. Washington*, 466 U.S. 668, 697
> (1984) (holding that if it is easier to dispose of an
> ineffectiveness claim on the ground of lack of sufficient
> prejudice, that course should be followed). In order to support
> a claim that trial counsel was ineffective for failing to interview
> or call potential alibi witnesses, a PCR applicant must produce
> the witnesses at the PCR hearing or otherwise introduce the
> witnesses' testimony in a manner consistent with the rules of
> evidence. The applicant's mere speculation regarding
> witnesses' testimony cannot satisfy the applicant's burden of
> showing prejudice. *Glover v. State*, 318 S.C. 496, 498, 458
> S.E.2d 538, 540 (1995); *see also Underwood v. State*, 309 S.C.
> 560, 425 S.E.2d 20 (1992) (where applicant did not offer
> witnesses at PCR hearing but merely alleged they would have
> provided him with alibi defense, he failed to establish
> prejudice); *Porter v. State*, 368 S.C. 378, 386, 629 S.E.2d 353,
> 358 (2006) ("Mere speculation of what a witness' testimony
> may be is insufficient to satisfy the burden of showing prejudice
> in a petition for PCR."); *Dempsey v. State*, 363 S.C. 365, 369,
> 610 S.E.2d 812, 814 (2005) ("A PCR applicant cannot show
> that he was prejudiced by counsel's failure to call a favorable
> witness to testify at trial if that witness does not later testify at
> the PCR hearing or otherwise offer testimony within the rules of
> evidence.").
>
> In this case, the Applicant presented only one potential trial
> witness (besides himself) at the PCR hearing, and this witness
> stated that she was unable to recall the night of the crime. The
> Applicant indicated that, because of the lapse of time between
> the date of the incident and the time of the PCR hearing, he
> was unable to present to the PCR court any witness who could
> offer testimony that would have been helpful to the defense at
> trial. Nevertheless, and despite law to the contrary, the
> Applicant argued that he should still receive relief due to
> counsel's ineffectiveness for failing to interview and call these

witnesses. This argument is without merit, especially considering that this Court does not find the Applicant's own alibi testimony to be credible. In that vein, the record suggests that Bob Cumby's potential testimony would not, in fact, support the Applicant's claimed alibi. Furthermore, it is the Applicant's own fault that he is unable to now prove prejudice due to lapse of time, since he made his own choice to abscond before trial - despite having clear notice that trial was beginning the next day - and to remain on the run for many years. The Applicant is not entitled to a windfall based upon his own misconduct. Therefore, this Court concludes that the Applicant failed to establish any entitlement to relief on the ground that counsel failed to interview and call potential witnesses at trial. *See, e.g.*, *Bannister v. State*, 333 S.C. 298, 303-304, 509 S.E.2d 807, 809-810 (1998).

(App. 264–66).

The petitioner cannot show that the PCR court's decision was the result of an unreasonable determination of the facts as the PCR court's findings are supported by the record. The petitioner did not present Cumbee as a witness during the PCR evidentiary hearing (app. 200–55). PCR counsel explained, "The problem . . . and the reason we don't have folks here today to say exactly what happened or exactly where folks were is because we can't find those people" (App. 248). The petitioner confirmed that neither he nor PCR counsel had been able to find Cumbee prior to the time of the hearing, and the witnesses that PCR counsel was able to locate could not remember specifics from the night of the crime that could help the petitioner because so much time had passed (app. 211–12). As to the substance of Cumbee's testimony, the petitioner testified that he believed Cumbee would testify about "where we left from and how we came to be on the street that I was arrested on. He was with me from when we left the Cariolina [sic] Motor Inn and walked to where I was arrested at" (App. 210). At trial, the State gave a different synopsis of Cumbee's potential testimony. The trial record reflects that trial counsel sought a continuance to locate Cumbee (supp. app. 4–7). Initially, trial counsel did not identify Cumbee by name, and the State objected to any witness that was an alibi witness because trial counsel had not given a list of alibi witnesses to the State as required under state rules

20

(supp. 4–6). But once trial counsel identified Cumbee as the witness he wished to locate and call, counsel for the State indicated they would not object to Cumbee testifying:

> Mr. Cumbee would not be an alibi witness, because we would call him as a State's witness, because we think it bolsters the State's case to call Mr. Cumbee.
>
> Mr. Cumbee would testify that—the problem you've got is, the—with arm robbery, and burglary, within six minutes they had apprehended Mr. Ravenell. That's the time frame. By the time that he called the victim, Mr. Brad Spivey calls the police, and dispatch dispatched the patrol officer, he was in field custody when . . . basically they had him in custody within five or six minutes, or with a field interview would be more appropriate.
>
> At the time he talked to Mr. Ravenell, Mr. Ravenell gave the statement that he was coming from 24th Avenue North. Mr. Cumbee basically said that Mr. Ravenell was coming from the Carver Apartment area, which would be consistent with the State's version of how this happened, that he was fleeing from the scene.

(Supp. App. 8–9). Finally, with regard to the PCR court's findings on the petitioner's absence from trial and the delay in the PCR proceedings due to his flight, the record shows that the petitioner was present for jury selection, but he did not show up the following morning for the start of trial (app. 5–28). He was tried *in absentia* but was apprehended in Florida in 2006 and was sentenced at that time (app. 169–79). There is ample support in the record for the PCR court's factual findings.

Turning to the state court's application of federal law, on this issue the PCR court focused on the prejudice prong rather than the deficiency prong, citing *Strickland*'s holding that courts may evaluate the deficiency prong first "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice" (app. 264 (citing *Strickland*, 466 U.S. at 697)). The PCR court specifically found that the petitioner's own speculation as to what Cumbee's testimony would have been could not satisfy his burden of proving prejudice (app. 264–65). Though the PCR court referenced South Carolina state court decisions to support that finding, similar principles are found in federal law. *See*

*Bassette v. Thompson*, 915 F.2d 932, 940–41 (4th Cir. 1990) (noting an allegation that trial counsel did ineffective investigation does not support relief absent proffer of the supposed witness's favorable testimony).  Even assuming trial counsel was deficient for failing to do the things the petitioner now complains of, there can be no ineffectiveness without prejudice.  The petitioner has failed to show the PCR court unreasonably applied federal law in denying relief upon these claims, and, therefore, he is not entitled to relief under 28 U.S.C. § 2254(d)(1).

### *Ground Seven*

In Ground Seven the petitioner alleges that he received ineffective assistance of PCR counsel and PCR appellate counsel.[5]  The respondent argues that these claims regarding the ineffective assistance of collateral counsel are not cognizable in this habeas action (doc. 25 at 31–33).  In his response to the motion for summary judgment, the petitioner appears to concede that his Ground Seven is not proper for this action (doc. 36 at 12).  This court similarly agrees with the respondent that the claims expressed in Ground Seven are not cognizable in this action as it is well-established that alleged infirmities in a state post-conviction action are not matters that may be addressed in federal habeas actions.  28 U.S.C. § 2254(i); *Bryant v. Maryland*, 848 F.2d 492, 493 (4th Cir. 1988).  Though such ineffectiveness of collateral counsel claims may constitute cause to overcome a procedural default, *see Martinez v. Ryan*, 132 S. Ct. 1309 (2012), in this case, the respondent has not raised a procedural default defense to any of the petitioner's grounds.  Thus, there is no procedural default to overcome.  Accordingly, summary dismissal is appropriate.

_____

[5] Though the petitioner does not expressly identify whether he is referring to appellate counsel from his direct appeal or from his PCR appeal, the description of the actions by appellate counsel that he complains of, as well as the documents he attaches to his petition in support of his Ground Seven, lead the court to believe he is referring to PCR appellate counsel's actions.

***Motion for Evidentiary Hearing***

The petitioner filed a motion for an evidentiary hearing pursuant to 28 U.S.C. § 2254(e)(2).  To the motion, the petitioner attached an affidavit by James Wilson, Jr., which indicates that Wilson was with the petitioner and Cumbee on the evening the petitioner was arrested (doc. 19-2).  In support of his motion, the petitioner raises many of the same arguments articulated in his habeas petition, which have been addressed above.  An evidentiary hearing in a federal habeas action challenging a state conviction will not be held unless the petitioner shows that the claim relies on a new rule of law or that the factual basis for the claim at issue was unavailable and the facts sought to be proved would "establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense."  28 U.S.C. § 2254(e)(2).  The petitioner has failed to make the required showing.  Indeed, even assuming that Wilson's testimony was found to be credible and was previously unavailable to the petitioner, Wilson's affidavit clearly concedes that Wilson was not with the petitioner at the time of his arrest, nor does it appear that Wilson was with the petitioner immediately prior to his arrest (doc. 19-2).  The information presented by the petitioner does not warrant an evidentiary hearing.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, it is recommended that the respondent's motion for summary judgment (doc. 24) be granted. It is also recommended that the district court deny a certificate of appealability. Additionally, the petitioner's motion for an preliminary hearing is hereby denied (doc. 38). The attention of the parties is directed to the notice on the next page.

s/ Kevin F. McDonald
United States Magistrate Judge

May 11, 2016
Greenville, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (*quoting* Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk of Court**
**United States District Court**
**300 East Washington Street — Room 239**
**Greenville, South Carolina 29601**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).